In Special Term—January 1855.

GHOLSON, J. presiding.

## HEIDELBACH, SEASONGOOD & Co. vs. SLADER & WILSON.

An action for use and occupation was regulated, but not introduced, by Stat. 11 Geo. 2 C. 19 Sec. 14.

The substantial matter in such an action is, that the defendant has occupied, by the permission of the owner, entitled to receive remuneration for the use of his land. Where that permission has been given to the defendant in any form, and has been followed by an occupation of the premises on his part, without objection to the title claimed, or the setting up an adverse title, a contract to pay may be fairly implied; but if the circumstances of the case are inconsistent with the existence of a contract, and rebut an implication of a promise to pay rent, this form of action cannot be maintained.

A purchaser at a sale under execution is not entitled to take possession of any real estate purchased until the confirmation of the sale by order of the proper court; and prior to that time, he cannot be entitled to receive remuneration for the use of the property, so as to maintain an action for use and occupation under any implied agreement. After a confirmation of the sale, though before the execution of a deed

from the sheriff, under the operation of the act in relation to forcible or unlawful entries and detainers, the purchaser must be considered as entitled to the possession of the property, and may, if otherwise sustained by the circumstances of the case, maintain an action for use and occupation.

This was an action of assumpsit for the use and occupation of a house and lot in the city of Cincinnati, originally brought in the Court of Common Pleas, and transferred to this court. The plea was non-assumpsit.

William Woodruff, owner of the fee, mortgaged the premises to Sampson, on the 26th February, 1847. On the 6th March, 1849, Woodruff, by deed duly executed, leased the premises for five years and a half to Moore & Chester. The rent was made payable in the negotiable promissory notes of the lessees, to be delivered, in advance, on the first day of each quarter, to the lessor, the notes to be payable at ninety days from date. If the rent was not paid, a right of entry was reserved.

On the 17th January, 1853, the premises were sold under a decree on the mortgage. On the same day a verbal notice of the sale, for the purpose of claiming the rent from that time, was given by the plaintiffs to the defendants, then in possession, under an assignment of the lease from Moore & Chester. On the 20th January, 1853, the defendants paid the note made on the previous quarter-day in October, and executed another, in the amount of $212.50, to Woodruff, for the rent of the next quarter, according to the terms of the lease. On the 22d January 1853, a written notice was served on the defendants by the plaintiffs, claiming the rent from the day of sale.

To the notices and claim of rent on the part of the plaintiffs, the defendants do not appear to have made any definite answer; but no objection was offered, and no claim of any adverse interest was made.

58

On the 9th April, 1853, the sale was confirmed. On the 21st April, 1853, a deed was executed and delivered by the sheriff to the plaintiffs, and on the same day possession of the premises was delivered to them by the defendants.

The plaintiffs claimed to recover for the use and occupation of the premises, in whole or in part, from the day of sale to the time the possession was delivered. And the case was submitted to the Court.

GHOLSON, J.

It will be proper, first to enquire as to the form of remedy the plaintiffs have adopted; whether upon the facts in the case an action for use and occupation will lie? On this point there is a decision of the Supreme Court of Ohio, Peter *vs.* Elkins, 14 *Ohio* 344, in a case very similar to the present. In that case, it is said, that the action of assumpsit for use and occupation, will not lie at the suit of a purchaser of mortgaged premises, sold under a decree in chancery, against a tenant in possession, under the mortgagor.

In the case of Peter *vs.* Elkins, as in this, the title accrued to the plaintiff before the termination of the lease from the mortgagor to the defendant, and of his occupancy under it, but the Court held there was no right to recover for any portion of the time. The principle, on which the decision was made, was that "the action for use and occupation will lie only between persons holding the relation of landlord and tenant." 14 *Ohio* 345, citing 6 *Ohio* 371; 4 *Id.* 205. "It springs from the mutual assent of owner and occupant, that the latter holds by permission of the former." "The assent to establish a ten-

ancy may be implied from acts." 14 *Ohio* 346. It will be "implied from the actual occupation and enjoyment of the premises, by the permission of the owner, or other person having the power of disposal, when such use and occupation had been beneficial." 4 *Metc.* 224, 228; 12 *M. & W.* 323. (n.)

In has been supposed that an action for the use and occupation of land was introduced by Stat. 11 *Geo.* 2 *C.* 19, § 14; 1 *Denio* 38; but this appears to be a mistake; the operation of that Statute being only to prevent proof of a demise, unless by deed, from being fatal to the action; and, thus, though that Statute regulated, or better established, it did not introduce the action. Gibson *vs.* Kirk, 1 *Q. B.* 850, 855; 41 *E. C. L.* 809; Beverly *vs.* Lincoln, 6 *A. & E.* 829, 33 *E. C. L.* 226, (note.) An action for use and occupation being maintainable at common law, from the nature of the action, this principle is said to result, "that he who holds my premises without an express bargain, agrees to pay what a jury may find the occupation to be worth." Mayor of Thetford *vs.* Tyler, 8 *Q. B.*, 55 *E. C. L.* 95–100.

It is said on this point, in the case of Gibson *vs.* Kirk: "The truth is, that the occupation of land by a person bound to pay some remuneration for it, without the amount or time of payment being fixed, was, and is now, of rare occurrence. When it does occur, the implied contract is raised by law from the fact, that land belonging to the plaintiff has been occupied by the defendant by the plaintiff's permission; the obligation is co-extensive with, and measured by the enjoyment; as soon as the occupation ceases, the implied contract ceases; and as no express time is limited, the remuneration must necessarily

accrue from day to day." The substantial matter is, that the defendant occupies, by the permission of the owner entitled to receive remuneration for the use of his land. Where that permission is given to the defendant in any form, and followed by an occupation of the premises on his part, without objection to the title claimed, or the setting up an adverse title, a contract to pay may be fairly implied. If, on the contrary, "the circumstances of the case are inconsistent with the existence of a contract, and, necessarily, upon any fair construction, rebut every implication of a promise to pay rent, this form of action will not lie." Croswell *vs.* Crane, 7 *Barb.* 191, 203.

In view of these principles, I have come to the conclusion, from what passed between the plaintiffs and the defendants, that if the plaintiffs were really the owners of the premises, so as to be entitled to remuneration for their use, a contract to pay the same may be reasonably inferred. The notices given by the plaintiffs may properly be considered a permission to occupy on the payment of rent. The defendants made no objection, set up no claim, and afterwards peaceably delivered possession to the plaintiffs. These circumstances, in my opinion, distinguish this case from Peter *vs.* Elkins; and if the plaintiffs have *a right* to remuneration for the use of the premises for any portion of the time from the day of sale to the time of their obtaining possession, it would, I think, be unreasonably strict to refuse it on account of the remedy adopted.

The plaintiffs claim to recover from the day of sale. They say, that on that day they parted with the use of their money, and should therefore be entitled to the rents and profits of the land. That it would be exceedingly unjust, that they should be entitled to the use of neither

the land nor money, until confirmation of the sale. Now, I cannot see, that there is any great injustice in this; the purchase is made in view of the Statute, which authorizes the money to be kept in the custody of the law, until the sale be confirmed. Such being the disposition of the money, for aught that appears, it would be an equal hardship on the debtor to deprive him of the possession of the land, until the money was applied in payment of his debt. The equity of the parties in this respect being equal, it is far more convenient not to change the possession in behalf of a purchaser, who until confirmation of the sale, it does not appear, will be certainly entitled thereto. This principle is clearly recognized by the legislature, in the "act to regulate the action for forcible entry and detainer." *Swan* 417, § 19. A summary remedy to recover the possession is given in cases of "sales of real estate on execution, after such sales shall have been examined by the proper court, and the same by said court adjudged legal."

It can scarcely be claimed, that under the system of sales under execution, established in this State, a purchaser is entitled to take possession of real estate before confirmation of the sale. And if he be not so entitled, it is difficult to show, on what principle he can claim remuneration, for the use of the premises sold prior to that time. The ground chiefly relied on is, that under the authorities in this State, so soon as the sale is perfected by confirmation and the execution of a deed, the title relates back and is considered to have been operative and effective from the day of sale. Oviatt *vs.* Brown, 14 *Ohio* 285–294. There appears to be a good deal of plausibility in this view, and the language of some of the authorities

as to the right of a purchaser at sheriff's sale, is quite strong; but such language must be construed in reference to the case then before the Court. There is no case in which the right of a purchaser to enjoy the rents and profits accruing before confirmation of the sale, was directly considered, unless it may be in the case of Peter *vs.* Elkins, in which, as already stated, the decision turned on the form of the action.

It appears to have been considered by the counsel for the plaintiffs in this case, and this consideration, indeed, forms the basis of their claim, that a legal title to land necessarily involved a right to receive remuneration for its use, by another person during the continuance of such a title. But this may not be true in all cases; and it may be, that the title of a purchaser at sheriff's sale may be considered operative and effective for many purposes from the day of sale, and, indeed, from the rendition of the judgment or decree; nay, farther, in case of proceedings to enforce a mortgage, or other lien, from the time it was created, and yet not confer a right to exact a remuneration for the use of the premises sold, until there has been an actual entry into possession by the purchaser, or he is placed by the law in a position which must be deemed as tantamount thereto.

The case of a mortgagor and mortgagee will illustrate this view. So soon as a mortgage has been properly executed, the mortgagee becomes for many purposes the legal owner. If he does not at once enter into possession, he is not the less a legal owner. But when he has not so entered into possession, for a space of time, and afterwards makes an entry, he cannot properly claim rents and profits which before accrued. And it seems now to be settled,

that he cannot set up a claim for the rents founded upon a mere notice to pay. The principle is that to justify a claim for rents which have accrued, there must have been a prior actual possession; a legal title, unaccompanied by such actual possession, will not suffice. And though this principle may appear to have been departed from in some cases of trespass for mesne profits after a recovery in ejectment, the reason is to be found in the estoppel created by the recovery.

The record in ejectment is evidence of the plaintiff's possession of the premises at the time of the demise, and on its production, he may be entitled to recover mesne profits subsequent to the date of the demise. If he goes for profits for a period beyond the date of the demise, he must prove such a title, accompanied by possession, as would enable him to maintain an ordinary action of trespass. Litchfield *vs.* Ready, 5 *Exch. R.* 939; Turner *vs.* Steam Coal Co., 5 *Exch.* 932 and cases cited.

In view of the principles and authorities, to which I have referred, I feel entirely satisfied, that prior to the confirmation of the sale, the plaintiffs had no claim to the rent, and a promise to pay, even if express, would therefore have failed, for want of consideration. It is by no means clear, that according to authorities cited, a purchaser at sheriff's sale, even after confirmation of the sale, or the execution of a deed, could recover in trespass or otherwise, a remuneration for the use of the premises he had bought, prior to an actual entry, or, independent of the aid of the estoppel in a judgment in ejectment. But in view of the Statute regulating a forcible entry and detainer, which obviously intends to place such a purchaser on the footing of a landlord, and the manifest justice and

equity of the case, I feel authorized to permit such a recovery, and especially where there are any circumstances from which a promise to pay may be implied.

I shall therefore assess and find for the plaintiffs, in respect of the time from the day of the confirmation of the sale, to the day possession was delivered.

BATEMAN for plaintiffs.    CURWEN for defendant.